IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES HUTCHINSON, | ) |
| Plaintiff, | ) 2:20-cv-745 |
| v. | ) |
| | ) Judge Marilyn J. Horan |
| WAYNE TOWNSHIP, WILLIAM HEPLER, and SHARI BANEY, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

In May 2020, Plaintiff, Charles Hutchinson, filed suit against Defendants, Wayne Township, William Hepler, Shari Baney, Lillian Welsh, and Matthew Vanasco, alleging claims for retaliation, malicious prosecution, and conspiracy pursuant to 42 U.S.C. § 1983 and the First Amendment of the Constitution. (ECF No. 1). On April 12, 2021, this Court issued an Opinion and Order with regard to Defendant Welsh's Motion to Dismiss, which dismissed her from the case. (ECF Nos. 30 & 31). On October 19, 2021, the parties stipulated to the dismissal of Defendant Vanasco only. (ECF No. 42). The remaining Defendants are therefore Wayne Township, Township Supervisor William Hepler, and Township Secretary Shari Baney.

Discovery has been completed, and the remaining Defendants have filed a Motion for Summary Judgment as to all counts of the Complaint. (ECF No. 58). The present Motion for Summary Judgment has been fully briefed, and the Motion is now ripe for decision. (ECF Nos. 58-61, 64-66, 70). Based on the following reasoning, Defendants' Motion for Summary Judgment will be granted as to all claims and all counts of the Complaint.

I.  **Statement of Facts**

Wayne Township is a Pennsylvania Municipal Corporation governed by a board of three Supervisors. (ECF No. 59, at ¶¶ 1-2; No. 64, at ¶¶ 1-2). Mr. Hutchinson was a Township

1

Supervisor from 2009 until December 31, 2021. (ECF No. 59, at ₱ 3; No. 64, at ₱ 3). Mr. Hepler has been a Township Supervisor since 2012. (ECF No. 59, at ₱ 4; No. 64, at ₱ 4). Ms. Baney was the Secretary of the Township, and her duties included administrative duties, paying bills, and taking minutes of Supervisor board meetings. (ECF No. 59, at ₱ 6; No. 64, at ₱ 6).

In addition to his Township Supervisor duties, Mr. Hutchinson owns Hutchinson Welding & Trucking, a business which performs hauling services and refurnished welding beds for trucks. (ECF No. 59, at ₱₱ 7-8; No. 64, at ₱₱ 7-8). Hutchinson Welding & Trucking uses tax exemption certificates for purchasing items such as fuel and parts to exempt payment of state taxes on the purchases. (ECF No. 59, at ₱ 9; No. 64, at ₱ 9).

In November 2016, Hutchinson purchased a McCormick tractor from McGrew Equipment Company. (ECF No. 59, at ₱ 10; No. 64, at ₱ 10). On November 28, 2016, McGrew invoiced Mr. Hutchinson's wife, Patricia, for the tractor purchase price of $18,520, and on December 5, 2016, Hutchinson paid $17,500 for the tractor, claiming a tax credit of $1,020. (ECF No. 59, at ₱ 11; No. 64, at ₱ 11; No. 60-8, at 1).

On November 28, 2016, Mr. Hutchinson used a fax machine in Ms. Baney's Township office to fax a Pennsylvania Tax Exemption Certificate to McGrew Equipment. The certificate included the Hutchinson Welding & Trucking tax exemption number. (ECF No. 59, at ₱₱ 12-13; No. 64, at ₱₱ 12-13). When Mr. Hutchinson faxed the Tax Exemption Certificate to McGrew Equipment, he used a Wayne Township fax cover sheet, which contained pre-printed headings of the Wayne Township address, phone number, and fax number. (ECF No. 59, at ₱ 15; No. 64, at ₱ 15). Ms. Baney typically maintains about five to seven partially completed Township Tax Exemption Certificate forms at her desk in the Township office. (ECF No. 59, at ₱ 18; No. 64, at ₱ 18). On these partially completed Tax Exemption Certificate forms, Ms. Baney lists Wayne

Township as the purchaser, and she also includes the Township's address and her signature. (ECF No. 59, at ¶ 19; No. 64, at ¶ 19).

Ms. Baney stated in her affidavit that, when she arrived at her office on the morning of November 28, 2016, she noticed a fax transmittal confirmation on the fax machine that referenced the Tax Exemption Certificate form that Mr. Hutchinson had faxed to McGrew Equipment. (ECF No. 59, at ¶ 22; No. 64, at ¶ 22; No. 60-16, at ¶ 4). Ms. Baney also stated in her affidavit that she was aware that Mr. Hutchinson was in the market to buy a tractor for his personal use when she found the fax transmittal confirmation. (ECF No. 59, at ¶ 26; No. 64, at ¶ 26; No. 60-16, at ¶ 5). Ms. Baney stated in her deposition that she suspected that Mr. Hutchinson had sent the Township Exemption Certificate form with the Township's tax exemption number to McGrew Equipment for his personal use purchase of the tractor. (ECF No. 59, at ¶ 27; No. 64, at ¶ 27; No. 60-2, at 11).

On January 20, 2018, Ms. Welsh was in the Township office, and she told Ms. Baney that she was going to go to the District Attorney's Office to report allegedly unlawful conduct occurring at the Township. (ECF No. 59, at ¶ 28; No. 64, at ¶ 28; No. 60-2, at 9). Ms. Baney decided to go with Ms. Welsh to the District Attorney's Office that day to report Mr. Hutchinson's fax to McGrew Equipment. (ECF No. 59, at ¶ 29; No. 64, at ¶ 29; No. 60-2, at 9). At the District Attorney's Office, Ms. Baney met with Detective Vanasco, where she reported her suspicions that Mr. Hutchinson had used the Township Exemption Certificate form to purchase a tractor for his own personal business. (ECF No. 59, at ¶ 30; No. 64, at ¶ 30). Ms. Baney gave Detective Vanasco the fax transmittal confirmation sheet that she found on her fax machine on the morning of November 28, 2016, plus an example of the partially filled out Township Tax Exemption Certificate. (ECF No. 59, at ¶ 30; No. 64, at ¶ 30). On December 10,

2019, Mr. Hutchinson was charged by Detective Vanasco with theft by unlawful taking, theft by deception, and unlawful device making equipment in connection with the alleged use of the Township Exemption tax number to purchase a tractor for his own personal business. (ECF No. 59, at ⁋ 33; No. 64, at ⁋ 33).

Ms. Baney contacted the District Attorney's Office several times concerning the investigation into Mr. Hutchinson's use of the Township Tax Exemption Certificate form. (ECF No. 59, at ⁋ 34; No. 64, at ⁋ 34). After learning that the District Attorney's Office and Detective Vanasco had failed to investigate the case against Mr. Hutchinson, Ms. Baney decided to personally contact McGrew Equipment to obtain the actual Tax Exemption Certificate that Mr. Hutchinson had faxed on November 28, 2016. (ECF No. 59, at ⁋ 35; No. 64, at ⁋ 35). In response to Ms. Baney's request, McGrew Equipment emailed Mr. Hutchinson's Tax Exemption Certificate to Ms. Baney on January 17, 2020. (ECF No. 59, at ⁋ 36; No. 64, at ⁋ 36). McGrew Equipment's email showed that Mr. Hutchinson had used his company's own tax exemption number on the Tax Exemption Certificate that he had faxed to McGrew Equipment on November 28, 2016. (ECF No. 59, at ⁋ 37; No. 64, at ⁋ 37).

The Preliminary Hearing on the criminal charges brought against Mr. Hutchinson was originally scheduled for December 18, 2019 but was postponed until early 2020. (ECF No. 59, at ⁋ 38; No. 64, at ⁋ 38). On January 20, 2020, Ms. Baney handed Detective Vanasco a copy of the Tax Exemption Certificate provided to her by McGrew Equipment. (ECF No. 59, at ⁋ 39; No. 64, at ⁋ 39). On January 29, 2020, the criminal Complaint against Mr. Hutchinson was withdrawn, and the Preliminary Hearing was canceled. (ECF No. 59, at ⁋ 40; No. 64, at ⁋ 40).

## II. Standard of Review

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury

merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III. Discussion

#### A. *Monell* Doctrine

Defendants argue that any claims brought against them should be dismissed under the *Monell* doctrine as any such actions taken against Mr. Hutchinson were taken in their official capacities. (ECF No. 61, at 10). Mr. Hutchinson argues that the Defendants' actions taken against him reflected an official policy for the purposes of Defendants' *Monell* arguments. (ECF No. 65, at 23).

Mr. Hutchinson brings both his retaliation and conspiracy claims pursuant to § 1983. Section 1983 provides that a state actor who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. A plaintiff bringing a claim under § 1983 therefore must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations and citations omitted). For a local government entity, such as Wayne Township, to be found liable under § 1983, the plaintiff is required to prove that the adverse action taken against the plaintiff was a result of a state policy, not the result of an individual

actor. *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020). Indeed, there is no theory of respondeat superior in a municipality § 1983 claim. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). "[A] municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)." *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). "An employee who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified his decision." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010). However, "[s]imply going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *Praprotnik*, 485 U.S. at 130. In order to determine whether ratification occurred for the purposes of *Monell* liability, the Court must examine whether a "particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker." *Id.*

In order for Mr. Hutchinson to succeed in his § 1983 claims, he would need to show that the actions taken by Mr. Hepler and Ms. Baney were actions taken by individuals who have decision-making authority at the Township or that their actions were ratified by an individual with decision-making authority at the Township. Mr. Hutchinson argues that, as one of the three

Township Supervisors, Mr. Hepler had decision-making authority at the Township; however, Mr. Hutchinson he has not pointed to any evidence to show that Mr. Hepler was a final decision-maker at the Township.  Ms. Baney was the Secretary of the Township; but Mr. Hutchinson has pointed to no evidence to suggest that Ms. Baney was a final decision-maker.  In addition, Mr. Hutchinson has not produced evidence to show that Mr. Hepler knew any information about the Tax Exemption Certificate before he learned about the criminal charges brought against Mr. Hutchinson.  On January 8, 2020, the Township's Solicitor called Mr. Hepler to advise him about the charges.  (ECF No. 59, at ¶ 44; No. 64, at ¶ 44).  Further, if Mr. Hepler had been a final decision-maker at the Township, there is no evidence to suggest that Mr. Hepler knew of Ms. Baney's suspicions about the Tax Exemption Certificate or that Mr. Hutchinson was being investigated by the District Attorney's Office.  As such, Defendants' Motion for Summary Judgment will be granted as to any claims brought against Wayne Township and Mr. Hepler and Ms. Baney in their official capacities.

### B.  Retaliation

Defendants argue that Mr. Hutchinson's retaliation claims against Mr. Hepler and Ms. Baney should be dismissed because there is no evidence to support Mr. Hutchinson's claims. (ECF No. 61, at 2).  Mr. Hutchinson argues that his retaliation claims against Mr. Hepler and Ms. Baney are supported by the record evidence.  (ECF No. 65, at 15).

To establish a First Amendment retaliation claim, a plaintiff must establish that "(1) he engaged in constitutionally protected conduct; (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).

As to the first element, it is uncontested by the Defendants that seeking political office is constitutionally protected conduct. The "right to seek political office . . . is undeniable." *Downs v. Borough of Jenkintown*, No. 18-4529, 2020 U.S. Dist. LEXIS 90191, at *31-31 (E.D. Pa. May 22, 2020). Thus Mr. Hutchinson has satisfied this element.

As to the second element, "[d]etermining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). "To properly balance these interests, courts have required that the nature of the retaliatory acts committed by a public employer be more than *de minimis* or trivial. *Id.* (quoting *Suarez*, 202 F.3d at 686). "A public employer 'adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." *Id.* (quoting *Suarez*, 202 F.3d at 686). "On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.* (quoting *Suarez*, 202 F.3d at 686).

"Where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will immediately follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Noonan v. Kane*, 698 F. App'x 49, 52-53 (3d Cir. 2017). This is because, "when a public official's allegedly retaliatory acts are in the form of

9

speech, the official's own First Amendment speech rights are implicated." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 176 (3d Cir. 2016) (quotations omitted). Because each party has a First Amendment interest, the court will "employ a more specific test to determine whether the official's speech amounts to a retaliatory act." *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017). Thus, a retaliation claim involving a government official's own speech must involve a "threat, coercion, or intimidation" by the official that a punishment will follow from the continued exercise of a plaintiff's First Amendment rights. *Id.* at 651 (quotation omitted).

Mr. Hutchinson has not adequately proved that Ms. Baney or Mr. Hepler took such retaliatory action against him. First, as to Mr. Hepler, Mr. Hutchinson has presented no evidence beyond mere conjecture that Mr. Hepler participated in Ms. Baney's decision to go to the police. As such, there is no evidence to establish any jury question that Mr. Hepler took retaliatory action against Mr. Hutchinson. Mr. Hepler's Motion for Summary Judgment will be granted as to Mr. Hutchinson's First Amendment retaliation claim.

As to Ms. Baney, Mr. Hutchinson has likewise not produced evidence sufficient to show that Ms. Baney's decision to go to the police was related to her political opposition to Mr. Hutchinson. Instead, the undisputed facts show that Ms. Baney reported her suspicions, about Mr. Hutchinson having used the Township Tax Exemption Certificate, to the police because she had seen the forms next to her office fax machine along with the fax transmittal confirmation form on the fax machine. Although the charges against Mr. Hutchinson were eventually dropped, it was reasonable for Ms. Baney to report to the police that which she saw on the morning of November 28, 2016. The evidence does not establish any jury question to support that Ms. Baney's police report was due to her alleged political opposition to Mr. Hutchinson as Township Supervisor. Instead, the undisputed facts suggest that Ms. Baney reported her

suspicions to the police based upon the circumstances of what she saw in her office on the morning of November 28, 2016.  As such, Ms. Baney's Motion for Summary Judgment will be granted as to Mr. Hutchinson's First Amendment Retaliation claim against her.

### C. Conspiracy

Defendants argue that Mr. Hutchinson's conspiracy claims against Mr. Hepler and Ms. Baney should be dismissed because there is no evidence to support these claims.  (ECF No. 61, at 2).  Mr. Hutchinson argues that his conspiracy claims against the Mr. Hepler and Ms. Baney are supported by the record.  (ECF No. 65, at 15).

To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under the color of state law "reached an understanding" to deprive him of his constitutional rights.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  "After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, the rule is clear that plaintiff must provide some factual basis to support the existence of the elements of conspiracy: agreement and concerted action.  To show agreement, he must demonstrate that the state actors named as defendants in the complaint somehow reached an understanding to deny [the plaintiff] his rights."  *Id.* at 295 (internal quotations and citations omitted).

Mr. Hutchinson has not adequately proved that Ms. Baney and Mr. Hepler entered into a conspiracy to falsely accuse him of using the Township's Tax Exemption Certificate and to report his actions to the police because of their political opposition to Mr. Hutchinson.  The record contains no evidence, beyond mere conjecture, to support any finding that Mr. Hepler participated in Ms. Baney's decision to go to the police.  As such, Mr. Hutchinson has not met his burden of proof to demonstrate that Mr. Hepler and Ms. Baney entered into a conspiracy to

report the use of the Township Tax Exemption Certificate to the police. Mr. Hepler and Ms. Baney's Motion for Summary Judgment will be granted as to Mr. Hutchinson's conspiracy claims.

## IV.  Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment will be granted. Judgment will be entered in favor of the Defendants as to all claims and all counts in the Complaint. Accordingly, an appropriate Order shall be entered.

DATE: September 26, 2022

Marilyn J. Horan
United States District Judge